*71 The opinion of the Court was delivered by
Withers, J.
The proceedings against this defendant, as legal representative of Allen Moye, and against G. R. Odom, sureties of a deceased administratrix, before the Ordinary, were founded upon an administration bond bearing date in 1829. At that time, the decisions of the Court of Law required that an account -should be had with the administrator before the surety on his bond could be sued upon that obligation, in a court of law; and it was, moreover, held that in case of an absent administratrix, or one deceased with no legal representative, the accounting necessarily precedent to the enforcement of the surety’s liability could not be had before the Ordinary; nor could that officer summon the surety of an administrator, whether the latter was living or dead.
Such were the difficulties which obstructed an action at law against the surety of an administrator until 1839, when it was provided by Statute (vide sec. 9 of the Ordinary’s Act of that year) that in case of the removal of an administrator, or where he cannot be served, an account against him could be taken by the Ordinary, upon a citation of his sureties, or the representatives of a deceased surety; and, further, “ when the administrator shall have departed this life, without having accounted, leaving no executor or administrator, it shall be sufficient for the Ordinary to cite the securities by personal summons, or by notice in the Gazettee, as in the case of removal from the State, and proceed to take an account, as in other cases ; and the said decree shall have the same force and effect against the sureties as if pronounced against the administrator in his lifetime.”
We now have before us a case wherein an administratrix has departed this life, with no executor or administrator to represent her estate, (so far as we know) one surety on her bond surviving and a representative of another surety. The survivor and that representative of the deceased surety have been cited before the Ordinary, upon a petition for an account of the transactions of the administratrix; that accounting has been had upon the citation of such persons; a decree has been pronounced ascertain’ *72 ing a liability in favor of the real plaintiffs upon the estate of the deceased administratrix, and this action is against the representative of the deceased surety.
The first objection to this proceeding before the Ordinary is, that the representative of a surety cannot be cited, in the case of a deceased administrator; and so the decree against him, as such, in the Ordinary’s court, is void, being a cause coram non judice. We think otherwise; because, by express terms of the Act of 1839, such a representative may be cited in the case of an administrator removed, or one who could not be served, with a view to an account and decree against such administrator; and in case of an administrator dead and without legal representative (which is this case) the citation is to be on the sureties, “ as in the case of removal (by administrator) from the State.” The scope of the Act undoubtedly was, to remove difficulties at the threshold,— to open the way for efficient remedy against an obligor over obstacles of rather a technical character. The reason which moved the remedial legislation embraced all the cases in which such obstacles had before been interposed, and the words which describe this case will fairly allow a construction that conforms to the obvious scope and purpose of the Act of Assembly.
Next this action is resisted upon the ground of the inviolability of contracts ; and we are invited to consider whether the remedial scheme#of the Act of 1639 must not be held inapplicable to the bond of an administrator’s surety, executed before that date, because, otherwise. it would be obnoxious to the charge of violating the obligation of this contract.
Now, as heretofore, the contract of an administrator’s surety is held to import an obligation to indemnify for a default of the principal. Now, as heretofore, a decree, ascertaining the default of the principal, is held requisite. Now, as heretofore, such decree is held to be evidence only against the surety. There must be a clear distinction between the effect of legislation, or of judicial decision, which facilitates merely the mode and means of procuring evidence, and that which shall be considered *73 as impairing the obligation of the contract upon which such evidence is to bear. To open the way of approach to one who is liable on a contract, and to impose upon him, when you reach him, different terms of contract, or additional burthen or liability, suggest ideas quite dissimilar. Indeed, when we consider that the prohibition to pass a law impairing the obligation of a contract seems to imply the idea of protection to him who has the right and the interest to enforce it, facilities towards that very end would not appear to fall naturally within the purview. We suppose the Court of Equity might always have enforced the obligation against the surety in such a case as this, and if the machinery has been improved, by which the same thing may be done in another jurisdiction, we do not perceive how the obligation of the contract is thereby impaired or affected. In 1829, the death or removal of an administrator created difficulties in the way of one having interest in seeking a remedy for breach of contract against a surety. How can the removal of such obstacles in the course of the remedy, sought in a certain jurisdiction, be deemed to touch the obligation of the contract, when the very same interpretation of the contract is preserved, and not a particle of additional liability is imposed ? Surely a debtor upon note or bond would not be heard to invoke the protection of the doctrine we are considering, because, since the execution of the contract, a statute had substituted a different mode or grade of proof of the handwriting of a witness to the execution of the contract; or provided a facility of procuring any evidence touching the cause of action by a commission issued to a place or person where or to whom it could not have gone at the origin of the cause of action. Yet we have examples of legislation of both descriptions. In substance, the Act of 1839 has done no more. It has merely made a summons, in case of the death or removal of the administrator, to. his privies in law, equivalent to a personal summons to the administrator, for the purpose of taking the account held to be preliminary to action. Surely we may sustain such legislation as this against *74 the imputation levelled at it, when insolvent laws have withstood the like.
We do not suppose the matter adjudged in the case of the State vs. Wylie, (2 McM. 1,) at all conflicts with our opinion on this point. The legislature had declared that it should not be lawful to commence any action against a sheriff’s surety until a return of nulla bona should be had upon some execution against the sheriff. That provision was held to be a part of the contract of a sheriff’s surety, for reasons assigned; but, in that case, a distinction was expressed, between a statutory provision that “ related to the nature of a surety’s liability,” and “ the mode in which persons aggrieved should obtain redress.” Without dwelling upon any diversity that may be alleged to exist between an absolute legislative prohibition to commence an action, and a course of judicial decision which led the Court to decline to render a judgment without the aid of an account, which it was almost impracticable to take in such jurisdiction as the Common Pleas, it is sufficient to remark, that the matter now contested and under consideration related scarcely to so important an object as the mode of remedy, in any genuine or general sense, but rather to the mode and duty of obtaining an account and decree thereupon, as matter of prima facie evidence, held requisite by our Court, not as a condition upon which alone rested a legal liability, but as a convenience in enforcing it in our jurisdiction. It is our judgment, therefore, that the motion for nonsuit was properly refused.
Yet, we are of opinion the motion for a new trial stands upon firmer ground.
Each of the two parties, who are real plaintiffs here, claims about $800 from the representative of a surety of their mother, who administered upon their father’s estate, and long since died. When the mother died, she left an estate of her own. It was distributable, that is, the nett remainder, after debts were paid, among Jones (a second husband surviving) his two children, and the two real plaintiffs in this case. No court would order partition, among those entitled as distributees, until it *75 should be informed that all debts were paid. One debt, and the only one we have heard of, due and payable by the estate in question, was owing to these plaintiffs, being the same now claimed by them; it was a sum due by their mother in character of administratrix of their father’s estate, and is now, in effect, claimed by them from one of the sureties on her administration bond. This debt is claimed from a surety, after (as it is alleged) these plaintiffs have received, as distributees, a portion of the estate of their mother, upon a bill filed for partition of that estate, in which they were defendants; and, on behalf of the defence, it was proposed to offer this evidence by way of discount or payment. This was rejected, on circuit, for the reason that it was not offered before the Ordinary, and his decree, it was supposed, had the effect of shutting out the evidence in the court of law. That it was not excluded upon that ground, is adjudged in an opinion delivered, at this term, in the case of Stuart vs. McCully, and another case involving the same point, and decided in connection with it.
Another reason is now supposed to justify the decision below, to wit, — that receiving a part of the estate or assets of the administratrix, by these creditors, is no matter of discount or payment, in behalf of her surety.
We are now to consider that position.
The surety is sued for a demand against his principal. If it were a common case of note or bond, it would seem obvious that if the creditor had received money or goods or assets of the principal, this should be held to abate the demand against the surety, in part or in whole, as the case might be. If there were a counter demand due to the principal against the creditor — or if money had been paid by the principal to the creditor,— undoubtedly the administrator of the principal could use such matter of defence, and why not the surety also ? The death of the principal, the indebtedness of the principal as administrator, the creditor being also . distributee of the principal debtor, other persons introducing themselves as co-distributees of the principal *76 debtor, — all these concurring facts may breed confusion in our perception of a complicated state of transactions, and of the principle of right and of law that should run through them. Yet if we can perceive a thread that should guide us fo the very right, and the law does not oppose, we ought to follow it. Now it has been shown that an administrator of Mrs. Peeples not only could but would be bound to apply her assets, first, to the payment of debts. It is clear that he could not acquiesce in partition until that was done, without violating his legal duty and his bond. It is certain that no court would order partition until it was given to understand that all debts were paid, and, until then, distributees are not entitled to it. Now these creditors of Mrs. Peeples have effected a partition of her estate, in part at least, and if their complaint have any foundation, they were creditors at the time of their participation in that partition. What does their conduct imply? That all debts of Mrs. Pee-ples were paid, — and if not, their interference in her estate made them executors de son tort, and they would be liable for a devastavit in rendering the estate to distributees before the payment of debts, just as a regular administrator would be. They were defendants in the bill for partition, it is true, and some of the estate has gone to co-distributees ; but they had nothing to do except to make known their debts, and either they must have been paid, or else the process of partition must have been arrested. If what they admit they have done would amount to a de-vastavit in relation to the estate of the principal debtor, shall the effect of such conduct be visited upon the surety, and he be made to bear the burthen of this wrong?
Suppose these plaintiffs sole distributees of Mrs. Peeples,— that they held her bond for $1000, upon which the defendant’s intestate was surety, — that the estate left by Mrs. Peeples was, in gross, $2000, — it is plain they could, as distributees, be entitled to but $1000, — as plain as it would be if the debt for $1000 had been owing to a stranger to her blood. Now suppose them to have received the whole estate of $2000 (no matter if they did receive it in character of distributees) it seems manifest that *77 one-half of it must go to the debt. The case is only the stronger against them if it be supposed that they urged partition in a court, or acquiesced in it on an admission that all creditors were satisfied.
Our conclusion is that any evidence, competent in its character, going to shew that these plaintiffs have been paid out of assets of the estate of the principal debtor, in fact or by necessary presumption, — in whole or in part, — ought to have been received on the part of the defence.
What is said in Norton vs. Wallace does not touch this question. It would apply only in case the defence, in this action, should offer to shew that the real plaintiffs had received a portion of their father’s estate.
A new trial is granted.
Q’Neall, Evans, Wardlaw and Whitner, JJ. concurred,